

**Dated: December 13, 2016**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                                    )
                                          )
KHRISHNA KUMAR AGRAWAL,    )         Case No. 16-11253-JDL
                                          )         Involuntary Chapter 7
        Putative Debtor.           )

## MEMORANDUM OPINION AND ORDER FOR RELIEF
## IN INVOLUNTARY PROCEEDING

### Introduction- Statement of the Case

On April 4, 2016 (the "Petition Date"), CO & G Production Group, LLC ("CO & G"),

Spoon Resources, LLC ("Spoon"), Acadiana Maintenance Services ("Acadiana") and Great

American Insurance Company("Great American") (collectively, the "Petitioning Creditors")

filed an involuntary proceeding under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101,

et seq.[1] (the "Involuntary Petition") [Doc.1], against Krishna Kumar Agrawal ("Agrawal").

On April 6, 2016, the Petitioning Creditors filed their Amended Involuntary Petition. [Doc.

---

[1]Unless otherwise noted, all statutory references are to sections of the United States
Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

3].  On May 2, 2015, Agrawal filed his Motion to Dismiss asserting that the Petitioning Creditors' claims were contingent or subject of a bona fide dispute as to liability and amount, and the pending litigation with CO & G in Tulsa County demonstrated that the Involuntary Petition had been filed in bad faith. [Doc.15]. The Petitioning Creditors responded by their Objection to the Motion to Dismiss primarily asserting that their Involuntary Petition had stated a facially sufficient claim for relief and  that each of the four Petitioning Creditors was a holder of a valid final state court judgment. [Doc. 22].

On June 1, 2016, the Court entered its Order denying Agrawal's Motion to Dismiss on the basis that on its face the Involuntary Petition had stated a claim for relief under the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by Fed R. Bankr. P. 7012 [Doc. 25], and that any claim that the Petitioning Creditors had acted in "bad faith" was not ripe for adjudication unless the Court had previously entered an order of dismissal of the Involuntary Petition.  Agrawal thereafter filed his Answer to the Amended Involuntary Petition essentially asserting that a bona fide dispute existed as to liability and amount with each of the Petitioning Creditors claims as required by § 303(a)(1).

A Scheduling Conference was conducted by the Court on July 14, 2016.  Given the fact that the Petitioning Creditors had stated in prior pleadings that they were the holders of state court judgments, the Court directed the parties to submit on or before October 14, 2016, a summary of the state court proceedings giving rise to any judgments entered in favor of the Petitioning Creditors as well as briefs containing legal authority supporting their respective contentions as to whether a bona fide dispute existed pursuant to § 303(b)(1). These instructions to the parties were memorialized in the Court's Order of July 15, 2016,

2

setting an evidentiary hearing on the Petitioning Creditors' Involuntary Chapter 7 Petition on November 2, 2016. [Doc. 40].

Pursuant to the Court's Order made at the time of the Scheduling Conference, on October 14, 2016, Agrawal filed *Debtor's Overview of What Proof Will Show and Supporting Authority* (the "*Overview*") [Doc 43], arguing in conclusory language that the Petitioning Creditors' claims were contingent as to liability or the subject of a bona fide dispute as to liability or amount, and that the Petitioning Creditors "cling to certain judgments obtained by fraud, and they unlawfully seek for this Court's protection from state courts' examination to [sic] decisions as to whether or not their conduct was fraudulent." [Doc. 43, p.2].  In his *Overview*, Agrawal did not contest the fact that each of the Petitioning Creditors was the holder of a state court judgment.  Rather, he argued that for one reason or another the judgments were not valid and he had no obligation to pay the same.  On the other hand, the Petitioning Creditors in their *Summary of State Court Proceedings Giving Rise to the Claims of Petitioning Creditors* (the "*Summary*") [Doc. 44], submitted documentation to the court, supplemented by the Court's judicial notice of certain state court proceedings,  that all four of the Petitioning Creditors were the holders of state court judgments.

In its *Memorandum Opinion and Order Resolving Certain Legal Standing Issues in Involuntary Case* entered on November 1, 2016 (the "*Order*") [Doc. 51], this Court found Petitioning Creditors CO & G, Great American and Acadiana were the holders of final unappealed, or appealed but not stayed, judgments against Agrawal:  (1) a judgment in favor of CO & G in the District Court of Tulsa County for approximately $11 million; (2) a

judgment in favor of Great American in the District Court of Oklahoma County for $31,344.92 plus costs and, (3) a judgment in favor of or Acadiana in the District Court of Beaver County in the amount of $3,132.82.  As to Spoon, the Court found that it was the holder of a judgment in the District Court of Okmulgee County in the amount of $20,000; however, the District Court had pending issues as to whether additional damages were appropriate, making the $20,000 judgment in Spoon's favor interlocutory and thus not a "final" judgment for purposes of § 303(b)(1).

In its *Order* the Court found that applying the objective standards of determining whether a "bona fide dispute" existed as expressed by the Tenth Circuit in *Bartmann v. Maverick Tube Corp.,* 853 F.2d 1540,153-44 (10th Cir. 1988), the judgments held by the Petitioning Creditors were not subject to a bona fide dispute notwithstanding Agrawal's subjective displeasure with them.[2]  The Court also followed the clear majority view - the "*Drexler*" rule - that an unstayed, non-default state court judgment on appeal does not constitute a "bona fide dispute" for purposes of § 303(b)(1).  For the reasons stated in the *Order,* the Court concluded that there existed the three requisite Petitioning Creditors holding claims not subject to a bona fide dispute and meeting the aggregate monetary standard of $15,425.00 so as to have standing and thus eligible to file this involuntary bankruptcy.  This Court incorporates by reference its November 1, 2016, *Order*  into this *Memorandum Opinion and Order for Relief in Involuntary Proceeding* as if fully set forth

---

[2]  See also, *In re ELRS Loss Mitigation, LLC,* 325 B.R. 604, 625 (Bankr. N.D. Okla. 2005); *In re Miller,* 2012 WL 1029534 (N.D. Okla. 2012); *In re Red Rock Rig 101, Ltd.*, 397 B.R. 545 (Table), 2008 WL 2052732 (10th Cir. BAP 2008) (unpublished opinion) (holding that "[t]he mere existence of pending litigation is insufficient to establish the existence of a bona fide dispute".).

4

herein, and the findings of fact and conclusions of law contained in said Order shall be part of the Findings of Fact and Conclusions of law contained herein.

## II. Jurisdiction

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334(b). Reference to the Court of this contested matter is proper pursuant to 28 U.S.C. § 157(a). The determination of whether an order for relief should be entered in an involuntary bankruptcy case is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A).

## III. Burden of Proof

By its previous *Order*, the Court found that the Petitioning Creditors established a prima facie case that their claims are not subject to a bona fide dispute. *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543-44 (10th Cir. 1988). The burden then shifted to the alleged debtor, here Agrawal, to present evidence of bona fide dispute. *Id*. The Court found that Agrawal did not meet his burden of proof with regard to the existence of a bona fide dispute. Having found a sufficient number of creditors who hold claims in the necessary amount to determine that the Petitioning Creditors are eligible for the filing of the Involuntary Petition, however, is not enough. The next step is to determine whether Agrawal is not paying his debts as they fall due. Before the bankruptcy court may enter an order for relief in an involuntary proceeding, it must additionally find that "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1). The Petitioning Creditors carry the burden of proof to show by a preponderance of the evidence

that a debtor is generally not paying its debts as they become due. *Bartman*, 853 F.2d at 1546; *In re Harmsen,* 320 B.R. 188, 197 (10th Cir. BAP 2005); *In re Better Care, Ltd.*, 97 B.R. 405 (Bankr. N.D. Ill.1989).

**IV. Whether Agrawal is Generally Not Paying His Debts as They Become Due**

The Court conducted an evidentiary hearing on November 2 and 4, 2016, on the issue as to whether the Petitioning Creditors can establish that Agrawal was not paying his debts as they become due. As required by § 303(h)(1), a finding by this Court that Agrawal is generally not paying his debts as such debts become due is a prerequisite to the entry of an order of relief. *Paradise Hotel Corp. v. Bank of Nova Scotia,* 842 F.2d 47, 51 (3rd Cir. 1988) (recognizing that petitioning creditor must produce evidence establishing debtor was not paying its debts as such debts become due); *In re Miller*, 444 B.R. 446 (Bankr. N.D. Okla. 2011) (before bankruptcy court may enter an order for relief in an involuntary proceeding, it must find that "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are subject of a bona fide dispute as to liability or amount."); *In re Food Gallery at Valleybrook*, 222 B.R. 480, 486 ( Bankr. W.D. Pa. 1998) (recognizing bankruptcy court may not enter involuntary relief unless the debtor is generally not paying its debts as such debts become due); *In re Brooklyn Residential Recovery, Inc.*, 216 B.R. 470, 481 (Bankr. E.D.N.Y. 1997). It is fundamental that the determination of whether the debtor is generally paying such debts as they become due must be made as of the date of the filing of the petition. *In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 779 F.2d 471, 475 (9th Cir. 1985); *In re Edwards*, 501 B.R. 666, 682 (Bankr. N.D. Tex. 2013); *In re Laclede Cab Co.*, 76 B.R. 687, 691 (Bankr. E.D. Mo.1987).

6

Courts generally employ one of two tests in making their decision whether to find a debtor was "generally not paying . . . debts." *In re ELRS Loss Mitigation, LLC*, 325 B.R. 604 (Bankr. N.D. Okla. 2005). One test is a holistic, "flexible case-by-case approach allowing the bankruptcy court to receive and consider all admissible evidence presented, the demeanor and credibility of the witnesses, and argument of counsel." *In re Harmsen,* 320 B.R. 188 (10th Cir. BAP 2005). In *In re Bartmann,* 853 F.2d 1540, 1546 (10th Cir. 1988), the Court of Appeals stated that "bankruptcy courts should examine the totality of the circumstances, balancing the interests of the debtor with those of creditors." Following the "totality of circumstances" test in *Bartmann,* the Tenth Circuit BAP has held that the bankruptcy court may consider such factors as (1) whether the involuntary petition was in the best interests of the debtor and all creditors, (2) whether the creditor had other available remedies under state law, (3) whether the motives of the petitioning creditor were "something other than the self-centered desire to get paid", (4) whether the filing of an involuntary bankruptcy would cause harm to businesses employing the services of the debtor or to creditors of those businesses, and (5) whether the creditor was forum shopping when choosing to proceed in bankruptcy court against the debtor. *Harmsen*, 320 B.R. at 197. The bankruptcy court may also consider the debtor's overall conduct of his financial affairs. *In re Moss,* 249 B.R. 411, 422 (Bankr. N.D. Tex. 2000).

The other test employed by the courts to determine whether the debtor is generally paying his debts as they fall due is a more mechanical, "mathematical test". This test employs a two-step inquiry. The first step is to determine which debts the debtor was paying as of the filing of the petition and which debts the debtor was not paying as of that

7

time. *In re ELR S Loss Mitigation, LLC.*, 325 B.R. at 631; *In re R. N. Salem Corp.*, 29 B.R. 424, 428 (S.D. Ohio 1983). Once the court has determined that there are debts the debtor is not paying as they become due, the court engages in the second step of the inquiry which requires the court to compare the number and amount of unpaid debts with the number and amount of paid debts. That comparison is to take into account the materiality of that nonpayment as well as a debtor's general conduct of its financial affairs. *In re Better Care, Ltd.*, 97 B.R. 405 (Bankr. N.D. Ill.1989); *In re The Leek Corporation,* 52 B.R. 311, 314 (Bankr. M.D. Fla.1985).

Whether the Court employs the "totality of circumstances test" or the "mathematical test", the evidence presented by the Petitioning Creditors establishes that Agrawal was not generally paying his debts under § 303(h)(1). Looking to the first step of the mathematical test, the evidence showed the following with regard to Agrawal's debts, all but one of which are represented by judgments:

| CREDITOR | JUDGMENT AMOUNT | CREDITORS' EXHIBIT # |
|---|---|---|
| Calvary Portfolio Services LLC | $18,174.07, accrued interest, attorney fees and costs of $10,717.21 with interest at 24.990% | 7-D |
| Production Control Services, Inc. | $137,329.02 | 8, Claim 2-1 |
| Discover Bank | $9,995.24 | 9-F, 15-K |

| | | |
|---|---|---|
| Citibank South Dakota[3] | $12,472.96, $1,800.00 attorney fees, $219.00 costs | 15-A |
| Kenneth Redford, et al | $6,500.00, $2,650.00 attorney fees | 15-B |
| Cach, LLC | $13,210.24, $1,981.53 attorney fees | 15-C |
| Ten Hoeve Bros., Inc. | Unknown | 15-D |
| Fesco, L.P. of Texas | $15,922.00 | 15-E |
| Frontier Well Service, Inc. | $9,080.90 (lien - non-judgment) | 15-F |
| CO & G Production Group | $11,017,379.78 | 3-J, 15-G |
| Chris Holland | $68,700.00 | 1-D, 22 |
| Great American Ins. Co. | $31,344.92 | 6-F |
| Acadiana Maintenance Services | $3,132.82 | 5-G |
| Spoon Resources | $20,000.00 | 4-D |

In his testimony, Agrawal testified that in his opinion he didn't "owe" any of these debts, but he didn't deny the existence of the judgments relating to the them. He further testified that he had never paid on any of those judgments because he didn't owe them. Gary Ballenger, the representative for Great American, testified that he sought collection efforts to obtain payment on the judgment but no payments have ever been made. Ronald

---

[3] The judgments in favor of Citibank South Dakota, Kenneth Redford, Cach LLC and Ten Hoeve Bros., Inc., appear on their face to have expired for non-renewal or execution pursuant to 12 O.S. § 706. They may well, therefore, be "disputed" by Arawal; however they were not considered in for purposes of the mathematical test under § 303(h)(1) but were admitted into evidence by the Court solely for consideration of the Debtor's historical overall conduct of his financial affairs under the "totality of circumstances" test under applicable Tenth Circuit law.

Walker, the general manager of CO & G which has the $11 million judgment, testified that numerous garnishments and other collection efforts had been made to collect on the judgment but only $10.00 as ever been collected. Stephen Yeomans, the agent for Acadiana, testified that collection efforts had been made to collect its judgment but no payments had ever been recovered. There was no way for the Court to make a comparison of the total of the debts owed by Agrawal with his debts that he was paying. He testified that he didn't have any debts. He further testified that he had no regular source of income, and that he was only reimbursed certain expenses for performing services for the various entities owned by his wife and/or children.

The mathematical test also requires the court to take into account the debtor's general conduct of his financial affairs. In the present case, the Court regards this as a significant consideration. Jerry Parent, the Member Manager of Petitioning Creditor Spoon Resources, and Ronald Walker, the general manager of CO & G, both testified as to Agrawal's litigiousness and extensive experience in how to manipulate court proceedings to frustrate his creditors. Parent testified that he has been involved in thirteen (13) separate lawsuits with Agrawal. The Oklahoma District Court docket sheets reflect that over the past twenty years Agrawal has been a party to approximately 100 lawsuits, including six (6) as a defendant in Cleveland County, sixteen (16) as a defendant in Oklahoma County (out of a total of fifty-nine lawsuits in which he was a party), as well thirty-six (36) appellate cases in the Oklahoma Court of Civil Appeals or the Supreme Court (29 as a petitioner or appellant).[4]

---

[4] The court may take judicial notice of the state court docket sheet. *United States v. Ahidley*, 486 F.3d 1184,1192 n. 5 (10th Cir. 2007) ("We may exercise our discretion to take

Even more troubling to the Court in considering Agrawal's overall conduct of his financial affairs was his credibility and candor as a witness. Extracting the most basic information from him by testimony was difficult and argumentative. Even attempting to ascertain Agrawal's primary residence was difficult with Agrawal testifying that he moved about, sometimes sleeping at a house titled in the name of his wife (although she lives elsewhere), sometimes at a house titled in the name of his daughter, sometimes sleeping in his office (titled in the name of company owned by his daughter) and sometimes he sleeps in his car ("I do not have a primary residence"). He has not owned any real property in his name since approximately 1985. Rental properties are owned by his children's trust managed by a corporation owned by his wife. He performs some maintenance and other jobs for such rental properties but does not receive any income. Several businesses which he assists in managing owned by his children or companies owned by his children operate out of an office located at 4133 Lincoln Boulevard in Oklahoma City which is titled in the name of Vance Properties I owned by his children. He manages Vance Properties but testified he receives no income from those companies. Agrawal's wife has been employed for years by the Federal Aviation Administration, but he says he does not know what her job there is because of a security clearance issue. Based on the evidence presented, the Court finds that the Petitioning Creditors have met both the first and second steps of the

---

judicial notice of publicly filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *Adams v. Watts,* 2009 WL 5101759 (W.D. Okla. 2009) (taking judicial notice of the public records of the District Court of Comanche County available on the Internet); *Shoulders v. Dinwiddie ,* 2006 WL 2792671 (W.D. Okla. 2006) (court may take judicial notice of state court records available on the world wide web including docket sheets in district courts); *Stack v. McCotter,* 2003 WL 22422416 (10th Cir. 2003) (unpublished opinion) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed.R. Evid. 201).

mathematical test to establish that Agrawal was not generally paying his debts as they became due.

The Court now turns to the application of the evidence to the "totality of the circumstances test" enunciated in *Bartmann*. First, the filing of the involuntary petition is in the best interests of all creditors. It is evident to the Court that collection of any debt from Agrawal has proven to be difficult, if not impossible, by Arawal's strategy of employing a combination of litigation and making himself judgment proof. Bringing Agrawal within the jurisdiction of the Bankruptcy Court would be the most effective way to consolidate in one court, here the "umbrella" of the Bankruptcy Court, the most fair and equitable way to determine what assets, if any, Agrawal has and to equitably distribute such assets if available. There is no assurance that the appointment of a Chapter 7 Trustee would lead to the recovery of significant assets in this case. At the same time, there is even less assurance of payments to creditors if matters are allowed to proceed as they have in state court.

Second, it appears that the Petitioning Creditors, principally because of Agrawal's legal and financial maneuverings, have not had an adequate remedy under state law. Numerous garnishments, orders for hearing on assets and other post-judgment collection proceedings appear to have recovered virtually nothing for the creditors.

Third, it does not appear that the filing of an involuntary bankruptcy would cause harm to any businesses employing the services of Agrawal or to creditors of those businesses. Accepting as true Agrawal's testimony, it appears that he is only reimbursed for expenses but not paid a salary or other income by the various entities which he claims

are owned by his children.  If that is, indeed, the fact, Agrawal is not prohibited from continuing to render services, and those entities are not injured by the bankruptcy.

Fourth, the filing of the involuntary petition cannot be said to be an effort at forum shopping by the Petitioning Creditors because the proper forum for any Agrawal bankruptcy was in the Western District of Oklahoma where he resides.

Another factor in the "totality of the circumstances test" is whether the motives of the Petitioning Creditors were "something other than a self-center desire to get paid."  While not articulating this factor in opposition to the Petitioning Creditors, the only apparent defense presented by Agrawal to the involuntary bankruptcy is a related one that CO & G filed the involuntary petition as a litigation tactic to prevent the Tulsa District Court from conducting a hearing on Agrawal's motion to vacate the $11 million judgment.  Given the evidence presented in this case conclusively showing that the requirements for an order for relief in an involuntary proceeding have been met, including the Tulsa judgment being final, this Court need not speculate as to what other motives or strategy may have been behind CO & G joining as a Petitioning Creditor.  It is not necessary under the "totality of circumstances test" that the court find that all five factors set forth in *Bartmann,* or any additional factors, be determinative.  In its prior *Order* this Court made clear that it will not go behind the Tulsa District Court judgment or any other final state court judgment to determine the underlying factual merit of the judgment.  This Court is not to sit as an appellate court to determine the validity of a final state court judgment or collaterally attack the same by a ruling upon the Petition for Involuntary Bankruptcy.

### IV.  Conclusion

For the reasons set forth above and in the Court's Order of November 1, 2016, upon consideration of the Amended Petition filed on April 6, 2016, against the above-named Debtor, Krishna Kumar Agrawal, aka Kris Agrawal, the Court finds that the requirements of Bankruptcy Code § 303 have been met, and an order for relief under Chapter 7 of the Bankruptcy Code (Title 11 of the United States Code) is **GRANTED**.

# # #