

**Dated: October 30, 2017**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KHRISHNA KUMAR AGRAWAL, | ) | Case No. 16-11253-JDL |
| | ) | Involuntary Chapter 7 |
| Debtor. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER DENYING
### MOTION FOR SUMMARY JUDGMENT

This matter comes on for consideration upon the following:

1. *Debtor's Amended Motion for Summary Judgment* (the "Motion") [Doc. 106];

2. *Objection to Debtor's Amended Motion for Summary Judgment with Brief* of CO &G Production Group, LLC ("CO&G"), Great American Insurance Company ("Great American"), Acadiana Maintenance Services, LLC ("Acadiana") and Spoon Resources, LLC (collectively the "Petitioning Creditors") (the "Objection") [Doc. 112];

3. *Amended Reply Brief in Support of Amended Motion of for Summary Judgment* [Doc. 121];

4. *Sur-Reply in Support of Objection to Debtor's Amended Motion for Summary*

*Judgment* filed by the Petitioning Creditors ("Sur-Reply") [Doc. 129]; and

5.  Debtor's *Sur-Sur Reply in Support of Amended Motion for Summary Judgment* [Doc.133].

## I. Introduction

The Debtor Krishna Agrawal ("Agrawal") asserts that he is entitled to summary judgment dismissing this involuntary proceeding because at least two of the three Petitioning Creditors were limited liability companies not in good standing with the Oklahoma Secretary of State either at the time of the filing of the Involuntary Petition or at the time the Court entered the Order for Relief.  He contends that two of the three Petitioning Creditors which the Court found to be eligible to file the involuntary petition "did not exist as separate legal entities that could sue or be sued in the courts of Oklahoma . . meaning that they could not invoke the jurisdiction of the bankruptcy court pursuant to 11 U.S.C. § 303(b)(1)." [1]  The Petitioning Creditors respond to Agrawal's Motion on the basis that (1) the Debtor has waived the right to contest the Petitioning Creditor's eligibility to file the Involuntary Petition by not previously asserting the same, (2) the "law of the case doctrine" forecloses the Court's entertaining the issue of eligibility or, in the alternative, (3) the Petitioning Creditors' failure to remain in good standing with the Oklahoma Secretary of State was an issue not of jurisdiction but lack of capacity to sue which could be waived by the failure to timely assert the same, and (4) the Debtor had less than twelve (12) creditors and thus only one, not three, petitioning creditors was necessary pursuant to

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. §101 et seq; all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

§ 303(b)(2). To determine the issues raised by Debtor's Motion, it is necessary to as briefly as possible review the byzantine procedural history of the case. Having reviewed the Motion for Summary Judgment and the responses thereto, taken judicial notice of the Court file, heard the testimony of witnesses, examined the evidence duly admitted at trial and heard the arguments of counsel the Court makes the following Findings of Facts and Conclusions of Law required by Rule 7052.[2]

## II. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a) and Local Rule LCvR 81.3 for the United States District Court for the Western District of Oklahoma. This is a core proceeding as contemplated by 28 U.S.C. § 157( b)(2)(A).

### III. Debtor Agrawal's Motion for Summary Judgment

### A. Undisputed Material Facts

The parties do not dispute the material facts underlying the Motion for Summary Judgment; rather, they only disagree on the legal effect of such facts. The Court agrees, and finds the material undisputed facts gleaned from the record to be as follows:[3]

1.     CO&G is a limited liability company formed in Oklahoma on January 23, 2007 [Doc. 106-2, Ex.1].

2.     Acadiana is a foreign limited liability company qualified to do business in

---

[2] Findings of fact shall be construed conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P 7052.

[3] The Court takes judicial notice of its files and records. Fed. R. Evid. 201.

Oklahoma on March 13, 2013 [Doc. 106-3, Ex.2].

3.    CO&G was terminated by the Oklahoma Secretary of State on March 24, 2016 [Doc. 106-2, Ex. 1].

4.    CO&G, Acadiana, Great American and Spoon Resources, LLC were the Petitioning Creditors filing an Involuntary Petition against Agrawal on April 4, 2016 [Doc. 1].

5.    Acadiana was terminated by the Oklahoma Secretary of State on May 18, 2016 [Doc. 106-3, Ex.2].

6.    CO&G was reinstated by the Oklahoma Secretary of State on May 2, 2016 [Doc. 106-2, Ex. 1].

7.    Acadiana was reinstated by the Oklahoma Secretary of State on April 17, 2017 [Doc. 106-3, Ex. 2].

8.    On May 2, 2016, Agrawal filed his *Corrected Motion to Dismiss* the Involuntary Petition on the basis that the Petitioning Creditors claims were "contingent as to liability or the subject of a bona fide dispute as to liability or amount", and that the Involuntary Petition had been filed in bad faith [Doc. 15].  The *Corrected Amended Motion to Dismiss* did not raise the issue as to whether the Petitioning Creditors lacked the capacity to sue.

9.    After the Court entered its Order Denying Agrawal's *Corrected Motion to Dismiss* [Doc. 25], Agrawal filed his Answer to the Involuntary Petition again asserting that a bona fide dispute existed as to liability and amount [Doc. 32].  There was no allegation in the Answer as to the Petitioning Creditors lack of capacity, legal existence or authority to file suit in the State of Oklahoma.  Further, the Answer did not have attached to it a list

4

of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof as required by Rule 1003(b).

10.     On October 14, 2016, Agrawal filed *Debtor's Overview of What the Proof Will Show and Supporting Authority* [Doc. 43]. In his pleading Agrawal argued in conclusory language that the Petitioning Creditors claims were contingent as to liability or the subject of a bona fide dispute as to liability or amount, and that the Petitioning Creditors "cling to certain judgments obtained by fraud, and they unlawfully seek this Court's protection from state courts' examination to [sic] decisions as to whether or not their conduct was fraudulent" [Doc. 43, pg. 2]. Agrawal did not raise any question as to the Petitioning Creditors standing or capacity to file the Involuntary Petition because they were not in good standing with the Oklahoma Secretary of State.

11.     On October 18, 2016, Agrawal filed his Notice of Witness and Exhibit List [Doc. 46]. None of the witnesses and exhibits related to the capacity of the Petitioning Creditors to file the involuntary bankruptcy, including any issue as to their status with the Oklahoma Secretary of State.

12.     By its *Memorandum Opinion and Order Resolving Certain Legal Standing Issues in Involuntary Case* entered on November 1, 2016, the Court found that CO&G, Great American and Acadiana were holders of final unappealed, or appealed but not stayed, judgments against Agrawal and were eligible to be petitioning creditors in an involuntary proceeding under 11 U.S.C. § 303(b) [Doc. 51].

13.     On November 2 and 4, 2016, the Court conducted a two-day evidentiary hearing to determine whether an Order for Relief should be entered adjudicating Agrawal a debtor [Doc. 53 & 55]. There was no testimony, documentary evidence or argument

5

presented by Agrawal relating to lack of capacity or the Petitioning Creditors' status with the Oklahoma Secretary of State.

14.    On December 13, 2016, the Court entered its *Memorandum Opinion and Order for Relief in Involuntary Proceeding* [Doc. 63].

15.    On January 11, 2017,  Agrawal filed his Notice of Appeal to the District Court asserting that the Bankruptcy Court had erred (1) in its Order of November 1, 2016, in finding that "no bona fide dispute" existed as to the Petitioning Creditors' claims; (2) denying Agrawal from introducing evidence on the issue whether a bona fide dispute existed and (3) failing to consider that the creditor CO&G's state court judgment had been obtained by fraud [Doc. 69].  Agrawal did not raise the issue of any of the Petitioning Creditors not having capacity to file the involuntary proceeding or not having been in good standing with the Oklahoma Secretary of State.

16.    On March 27, 2017, the District Court dismissed Agrawal's appeal on the basis that it had not been timely filed [Doc. 81].

17.    On May 17, 2017, Agrawal filed his *Amended Motion for Summary Judgment* asserting that this Court did not have jurisdiction to enter an order for relief because two of the three creditors which this Court determined to be eligible were not because they had not been in good standing with the Secretary of State due to their failure to pay franchise taxes [Doc. 106].  Agrawal did not raise the issue as to the number of creditors which he had, i.e. whether in excess of twelve requiring three petitioning creditors or less than twelve creditors requiring only one petitioning creditor pursuant to § 303(b)(2).

18.    On May 26, 2017, (immediately preceding the show cause hearing on whether Debtor should be held in contempt for not complying with the Court's order

6

directing him to file schedules) Agrawal filed his Schedules [Doc. 108]. Schedules E/F listed seven creditors, including three of the four Petitioning Creditors. All seven of the creditors were listed as "disputed".

19.    On May 31, 2017, the Petitioning Creditors filed their *Objection to the Debtor's Amended Motion for Summary Judgment* [Doc. 112]. In their Objection, the Petitioning Creditors raised the issue that even if two of the three Petitioning Creditors were not eligible to file the involuntary bankruptcy, creditor Great America Insurance Company, whose capacity to be an eligible creditor has not been challenged, could by itself file the involuntary since there were less than twelve creditors as demonstrated by Agrawal's trial testimony and the original Schedules.

20.    On June 7, 2017, Agrawal filed his *Amended Schedule E/F* which added ten additional creditors, making a total of seventeen creditors (seven of which were his former attorneys) [Doc. 119]. All seventeen of the debts were listed as "disputed".

21.    On the same date of the filing of the Amended Schedules, June 7, 2017, Agrawal filed his *Amended Reply to the Petitioning Creditors Objection to Summary Judgment* [Doc. 121]. In his reply, Agrawal, for the first time asserted that he had more than twelve creditors as reflected by his Amended schedules so that the involuntary petition could not be sustained by Great American as the single eligible petitioning creditor.

22.    On June 16, 2017, the Petitioning Creditors filed a *Sur-Reply to the Debtor's Amended Reply Brief in Support of Amended Motion for Summary Judgment* [Doc. 129]. The Petitioning Creditors argued that: (1) the failure of two of the Petitioning Creditors to being in good standing with the Oklahoma Secretary of State was a question of "capacity" and not "standing", and that lack of capacity was a defense which was waived by Agrawal's

failure to timely assert the same; (2) even if the Court determined that Agrawal had not waived the issue of capacity or standing, he was judicially estopped from now asserting that there were more than twelve creditors which would require more than Great American. being the single eligible petitioning creditor, and (3) if the Court determined that more than a single petitioning creditor was required that the creditor's be granted leave to amend the Involuntary Petition to add additional qualifying petitioning creditors.

23.    On July 5, 2017, Agrawal filed his *Sur-Sur Reply in Support of Amended Motion for Summary Judgment* [Doc. 133]. Agrawal asserted that the Petitioning Creditors admission that CO&G and Acadiana were not "in good standing" with the Oklahoma Secretary of State divested them of Constitutional 'standing' to file this case [Doc. 133, ¶ 1]. Agrawal further argued that the Petitioning Creditors failure to be in good standing with the Secretary of State meant that the Petitioning Creditors "did not exist as a separate legal entity that could sue or be sued in the courts of Oklahoma... meaning that it could not invoke the jurisdiction of the bankruptcy court" [Doc. 133, ¶2, pg. 2].

### B. Standards for Summary Judgment

It is appropriate to grant a motion for summary judgment when the pleadings and other materials in the record, together with supporting affidavits, if any, demonstrate that there is no genuine dispute with respect to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding by Rule 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact". *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Courts must review the evidentiary material

submitted in support of the motion for summary judgment to ensure that the motion is supported by evidence. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden, then summary judgment must be denied. Hearsay evidence cannot be considered on a motion for summary judgment. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994).

When considering a motion for summary judgment, the court views the record in the light most favorable to the party opposing summary judgment. See *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991); *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997). Denial of summary judgment requires existence of genuine material issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505 (1986). No genuine issue of fact exists if a rational fact finder, when viewing the record as a whole, could not find for the party opposing the summary judgment. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) ("where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.").

"[T]he non-moving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998). Summary judgment can be a proper procedural device utilized to seek dismissal of an involuntary petition. *In*

*re Hoover*, 32 B.R. 842 (Bankr. W.D. Okla. 1983).

### C. Whether the Oklahoma Secretary of State's Termination of a Business Entity Due to Its Failure to Pay Franchise Taxes Precludes It from Being a Petitioning Creditor.

As a preliminary matter, the Court first notes that while not expressly stating the same, there does not appear to be any disagreement between the parties that, at the time this involuntary bankruptcy was initiated, CO&G lacked the capacity of a limited liability company to bring a cause of action, and that Petitioning Creditor Acadiana while in good standing at the time of the filing of the involuntary petition was not by the time this Court entered it's Order for Relief. The issue before the Court is what effect this misstep by the Petitioning Creditors had on the proper administration of this involuntary proceeding, including the jurisdiction of this Court as contended by Agrawal, and whether such error or infirmity was waived by Agrawal.

The capacity of a creditor, i.e. an Oklahoma corporation or limited liability company, bringing suit in an Oklahoma court, is determined by Oklahoma law. Fed.R.Civ.P. 17(b)(2) and (3), made applicable to this proceeding by Rule 7017.[4] Under Oklahoma law, an LLC that fails to timely file the annual certificates and pay the required fees ceases to be in good standing as a domestic LLC. 18 O.S. § 2055.2(D). One of the consequences of not being in good standing is that a domestic LLC "may not maintain any action, suit or proceeding in any court of this state until the domestic limited liability company has been reinstated as

---

[4] Rule 17(b) providing, in pertinent part, that, "Capacity to sue or be sued is determined as follows: *** (2) for a corporation, by the law under which it was organized; and (3) for all other parties, by the law of the state where the court is located...."

Rule 7017 provides that Fed.R.Civ.P. 17 applies in "adversary proceedings". In turn, Rule 1018 provides that [f]or purposes of this rule a reference in Part VII rules to adversary proceedings shall read as a reference to proceedings contesting an involuntary petition..."

a domestic limited liability company in good standing." 18 O.S. § 2055.2(F).  While there

appears to be no Tenth Circuit case authority directly on point as to whether an LLC that

is not in good standing under Oklahoma law is precluded from being a petitioning creditor

in an involuntary bankruptcy, there is authority within the Tenth Circuit holding that a LLC

terminated by the Secretary of State can neither file for bankruptcy, *Holliman v. Midpoint*

*Development, LLC v. Midpoint Development, LLC (In re Midpoint Development, LLC)*, 466

F.3d 1201 (10th Cir. 2006), nor bring an adversary proceeding against the debtor seeking

a determination that a debt was nondischargeable, *Ivey Brookside, LLC v. White (In re*

*White*), 556 B.R. 489 (Bankr. N.D. Okla. 2016).  Furthermore, in *White* the court found that

reinstatement of the LLC following termination could not relate back to the date of the filing

of bankruptcy or the filing of the adversary proceeding.

     Unlike CO&G, Acadiana was in good standing on April 4, 2016,  the date of the filing

of the involuntary petition.  It was terminated by the Oklahoma Secretary of State on May

18, 2016, and reinstated on April 17, 2017.  "A bankruptcy court determines the number of

petitioning creditors filing an involuntary petition on the date the bankruptcy is filed."

*Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1544 (10th Cir. 1988); *In re Smith*, 437

B.R. 817 (Bankr. N.D. Tex. 2010); In re Atwood, 124 B.R. 402, 406 (S.D. Ga. 1991*); In re*

*Drexler*, 56 B.R. 960 (Bankr. S.D. N.Y.1986);  *In re Garland Coal & Mining Co.*, 67 B.R.

514, 519 (Bankr. W.D. Ark. 1986) (court should determine the number of creditors as of the

involuntary petition filing date, rather than the date of the actual trial of the disputed

petition*).*  See Allen N. Resnick & Henry J. Sommer, 2 *Collier on Bankruptcy* ¶ 303.14 [3]

(16th ed.). The Court finds that Acadiana's capacity to be a petitioning creditor is not

subject to challenge.

The situation with CO&G is different than that of Acadiana. The filing of an involuntary petition is a hybrid of the filing of a voluntary petition and the filing of an adversary proceeding. In this case of first impression, the Court finds that the rationale in both the *In re Midpoint Development* and *In re White* cases would be applicable to preclude a terminated LLC from being a petitioning creditor in an involuntary proceeding. The Court also finds that CO&G's reinstatement with the Secretary of State after the filing of the involuntary bankruptcy did not retroactively imbue it with capacity to file the involuntary petition. *White*, 556 B.R. at 496. Those determinations, however, do not compel this Court to grant Agrawal's Motion and dismiss this bankruptcy.

### D. The Petitioning Creditors Failure to be in Good Standing with the Oklahoma Secretary of State Raised the Defense of Lack of Capacity, Not an Issue of Lack of Standing Depriving this Court of Jurisdiction.

Agrawal argues that CO&G's and Acadiana's lack of capacity to file and maintain prosecution of the involuntary petition precluded this Court from exercising jurisdiction over this proceeding under § 303. In doing so, Agrawal mistakenly conflates "capacity" with "standing" and "jurisdiction". In fact, at the same time that Agrawal argues that CO&G and Acadiana "could not invoke the jurisdiction of the Court" [Doc. 106, pg.4], he argues that they "lacked the capacity to file the Involuntary Petition" [Doc. 106, pg. 4]. Thus, Agrawal implicitly argues that CO&G and Acadiana did not have "standing" and the court has no jurisdiction to hear this claim.

Standing and incapacity to sue are two different concepts, often confused by lawyers and courts. See *Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir. 1992) ("Frequently, attorneys and courts confuse the concepts of standing with that of capacity to sue with the

real party in interest principle."); *Federal Deposit Insurance Corp. v. Bachman*, 894 F.2d 1233, 1235 (10th Cir. 1990). *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503, 126 S.Ct. 1235 (2006) (Supreme Court clarifying the distinction between "two sometimes confused or conflated concepts: - the courts 'subject-matter' jurisdiction over controversies; and the essential ingredients of a federal claim for relief.").

The overwhelming majority of cases hold that requirements of § 303(b), including the eligibility of the number of petitioning creditors, are not jurisdictional in nature. See e.g. *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 167-69 (2nd Cir. 2010); *Trusted Net Media Holdings, LLC v. The Morrison Agency, Inc. (In re Trusted Net Media Holdings, LLC)*, 550 F.3d 1035, 1037-41 (11th Cir. 2008) (en banc); *In re Saunders,* 379 B.R. 847, 855 (Bankr. D. Minn. 2007) ("This analysis of the eligibility requirement of the number of petitioning creditors lends itself to the conclusion that the other eligibility requirements of § 303(b) are likewise not jurisdictional."); *Rubin v. Belo Broadcasting Corp. (In re Rubin),* 769 F.2d 611, 614 n.13 (9th Cir. 1985) (requirements of § 303(b) are not jurisdictional but are "substantive matters which must be proved or waived for petitioning creditors to prevail in involuntary proceedings"); *In re Everett*, 178 B.R.132, 144 (Bankr. N.D. Ohio 1994) (The statutory elements set forth in § 303 "are not jurisdictional in the technical sense of subject matter jurisdiction, but are instead substantive matters which must be proved or waived for petitioning creditors to prevail in involuntary proceedings."); *In re Alta Title Co.*, 55 B.R. 133 (Bankr D. Utah 1985) ("While some courts have labeled the three petitioning creditor requirement as 'jurisdictional', this requirement is not jurisdictional in the sense of subject matter jurisdiction, but is a substantive matter which must be proved or waived if put in issue.").

Because the requirements are not jurisdictional, they can be waived. *In re Trusted Net*, 550 F.3d at 1043-46; *In re AMC Investors, LLC*, 406 B.R. 478, 482 (Bankr. D. Del. 2009). The leading commentators agree. See Allen N. Resnick & Henry J. Sommer, *2 Collier on Bankruptcy* ¶ 303.08 [2] (16th ed.) ("The circuits are in agreement that the requirements of section 303(b) – are not jurisdictional and may be waived"). Thus, the determination of the issue of whether there was a sufficient number of Petitioning Creditors (one or three) would not affect the jurisdiction of this Court to hear the involuntary proceeding.

Just as the claim that failing to be in good standing with the Secretary of State is a matter of lack of capacity and not jurisdictional, so too does such failure not result in a lack of Constitutional standing. Standing is generally discussed in the context of either Constitutional standing or prudential standing. Standing in the Constitutional sense is an element of the "case or controversy" requirement of Article III of the Constitution. To have this type of standing, a litigant must show: (1) that he has suffered an injury in fact, (2) that the injury is fairly traceable to the defendant's conduct, and (3) that the injury is likely to be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130 (1992); *The Wilderness Society v. Kane County, Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011).

On the other hand, prudential standing is not grounded in Article III but in "matters of judicial self-governance" designed to guarantee that courts only resolve disputes that are appropriate for judicial resolution. *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197 (1975); *The Wilderness Society v. Kane County, Utah*, 632 F.3d 1162 (10th Cir. 2001). One common prudential limitation on standing is the party generally may not assert the rights

14

of another person or entity.  See e.g. *Board of County Commissioners of Sweetwater County v. Geringer*, 297 F.3d 1108, 1111 (10th Cir. 2002).  A prudential limitation on standing, unlike constitutional standing, is subject to waiver and is not jurisdictional.  *The Wilderness Society,* 632 F.3d at 1168; *Niemi v. Lasshofer,* 770 F.3d 1331, 1344 (10th Cir. 2014).  Here there was (is) an actual case and controversy (the involuntary bankruptcy) subject to resolution in this Court, and the Petitioning Creditors were attempting to assert their own rights not those of a third party.  It is clear to this Court that the Petitioning Creditors' troubles with the Oklahoma Secretary of State do not present an issue of either constitutional or prudential standing.

In *In re Healthtrio, Inc.*, 2012 WL 1556526 (Bankr. D. Colo. 2012) (unpublished) the debtor argued that an involuntary petition must be dismissed because one of the petitioning creditors lacked standing to be a petitioning creditor.  The debtor's standing argument, as in the present case, was based on the contention that the petitioning creditor's corporate charter was not in good standing with the Delaware Secretary of State on the date the involuntary petition was filed so it lacked standing to invoke the jurisdiction of the bankruptcy court.  In rejecting that argument, the Bankruptcy Court stated:

> A party's lack of Constitutional standing to bring an action is a bar to a court's jurisdiction.  If standing does not exist on the date an action is commenced, then it must be dismissed for lack of jurisdiction.  **But the lack of a corporate charter is not an issue of Constitutional standing.  Instead, it is a matter of a litigant's capacity to sue.**  Under the federal rules, a corporation's capacity to sue or be sued is determined "by the law under which it was organized." Fed.R.Civ.P. 17(b)(2).  **Moreover, a party's lack of capacity on the date an action is commenced does not create a jurisdictional defect that requires dismissal of a case.**  A lack of capacity may be cured. *Lewis v. Ascension Parish School Bd.*, 662 F.3d 343, 347 (5th Cir. 2011) ("Unlike standing, the lack of which cannot be waived or cured, capacity to sue can be cured.") (citing 6 A Wright, Miller & Kane, *Federal Practice and Procedure* (2010) § 1570 at 676). (Emphasis added).

15

See also, *In re Gollehon*, 2015 WL 1746496 (10th Cir. BAP 2015) (slip opinion) ("Lack of capacity or authority is a defense the party asserting it must raise; it is analogous to an affirmative defense . . . (and) an affirmative defense is not preserved if the defendant never mentioned it at trial."; "Capacity or authority to sue based on corporate governance issues is not jurisdictional."); *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193-94 (2nd Cir. 2003) (Rule 17 relates only to determination of proper parties and capacity to sue and does not affect jurisdiction); *Summers v. Interstate Tractor & Equipment Co.*, 466 F.2d 42, 50 (9th Cir. 1972) (question of litigant's capacity to sue or to be sued generally does not affect subject matter jurisdiction); *Davis v. Lifetime Capital, Inc.*, 560 Fed.Appx. 477, 478 n.2 (6th Cir. 2014) (capacity is generally considered an affirmative defense, not a jurisdictional issue). Thus, the Court finds that Agrawal's objection to the Petitioning Creditors standing is unavailing, and the Court treats the question as one of CO&G's and Acadiana's capacity to sue.

The primary case upon which Agrawal relies in seeking summary judgment is *In re White,* 556 B.R. 489 (Bankr. N.D. OK 2016). While that case did hold that the failure to be in good standing with the Oklahoma Secretary of State barred the plaintiff from filing an adversary proceeding against the debtor, the Court did so on the basis of the plaintiff's lack of *capacity, not lack of jurisdiction or standing*:

> The question before the Court is whether the Creditor existed as an entity with the *capacity* to bring a lawsuit in an Oklahoma court on May 20, 2016, when this action was filed, or whether any subsequent action by Creditor has restored that *capacity*. (Emphasis added).

In *White,* the debtor/defendant challenged the creditor/plaintiff's capacity to file the adversary Complaint by attacking it early by way of a motion to dismiss filed twenty-seven

days after having been served with summons (the summons containing a thirty-five day answer date).  There was no question presented as to waiver of the defense of lack of capacity given the way the defense was timely raised and disposed of by the court.

### E. Lack of Capacity to Sue Is a Waivable Defense

Fed.R.Civ.P. 9(a)(2), made applicable to involuntary bankruptcy proceedings by Rule 7009 and 1018, states that a party seeking to assert a lack of capacity defense "must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge."  Failure to raise capacity in a responsive pleading constitutes waiver. *Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 53 (10th Cir. 1963) "([T]he failure of a foreign corporation to comply with the cited statute goes to its capacity to sue and is a matter of defense to be pleaded by the defendant in bar of the action."); See *E.R. Squibb & Sons, Inc. v. Accident & Casualty Insurance Co.*, 160 F.3d 925, 936 (2nd Cir. 1998) ("Lack of capacity is generally not considered jurisdictional and is therefore waived if not specifically raised."); *Wagner Furniture Interiors, Inc. v. Kemners Georgetown Manor, Inc.*, 929 F.2d 343, 345 (7th Cir. 1991)(defense of corporate plaintiff's incapacity to sue is waivable under Fed. R. Civ. P. 9(a)); *Trounstine v. Bauer, Pogue & Co.*, 144 F.2d 379, 383 (2nd Cir. 1944); *Tri-Med Finance Co. v. National Century Financial Enterprises, Inc.* (208 F.3d 215 (6th Cir. 2000) (Table), 2000 WL 282445,*5 (unpublished), (corporation waived its defense of incapacity to sue by not raising this issue for trial) (citing Wright & Miller that "although an objection to a party's capacity is not an affirmative defense, it can be analogized to an affirmative defense and treated as waived if not asserted by motion or responsive pleading. . . . Early  waiver is necessary to give meaning to the requirement in Rule 9(a) that capacity must be put in issue by a 'specific negative averment.'  Moreover,

an objection to capacity . . . should fall within the class of 'threshold defenses'-issues that must be raised and disposed of at the outset of the suit."). Has Agrawal by being dilatory in raising the issue of lack of capacity waived assertion of the same as a basis of his motion for summary judgment?

The Petitioning Creditors filed their Involuntary Petition on April 4, 2016. Agrawal did not raise the issue of any Petitioning Creditor's lack of capacity in his *Motion to Dismiss* or his *Corrected Motion to Dismiss* filed on May 2, 2016 [Doc.15][5]. He does mention at pages 6-7 of the *Corrected Motion To Dismiss* under the heading ""Corporate Addresses" that "the Secretary of State lists CO&G as 'Inactive', but nowhere in his *Corrected Motion to Dismiss* does he assert lack of capacity as a ground for dismissal nor make any argument that CO&G's "inactive" status is a ground for dismissal. Similarly, in the *Corrected Motion to Dismiss* Agrawal states that "Acadiana Maintenance Services is not registered with the Secretary of State for the State of Oklahoma." [Doc. 15, pg. 7]. Again, however, he does not make any argument that such lack of registration demonstrates lack of capacity as a basis for dismissal of the case. Agrawal's mere vague, unelaborated reference to CO&G's being "inactive" and Acadiana as "not registered with the Secretary of State for the State of Oklahoma" do not meet the pleading requirement that to raise the issue lack of capacity a party "must do so by a *specific denial*, which must state any supporting facts which are peculiarly within the party's knowledge." Rule 7009(a)(2).

---

[5] In his Corrected Motion to Dismiss he does assert in numerical ¶ 1 under the heading "Argument" that the original "Revenue Sharing Agreement" was with Energy Production Services, LLC "which was later discovered that no such corporation was registered with the Secretary of State of Oklahoma." This contract was apparently later assigned to CO&G. There is no mention in that paragraph of the Corrected Motion that the Petitioning Creditor CO&G was not in good standing.

The basis of his *Corrected Motion to Dismiss* and subsequent pleadings until the filing of the *Amended Motion for Summary Judgment* did not rely upon lack of capacity; rather, he argued exclusively that the Petitioning Creditors' alleged debts were subject to a "bona fide dispute" precluding such debts from making the Petitioning Creditors eligible creditors to file the involuntary bankruptcy under § 303. When the Court requested the parties to submit "summaries of the state court proceedings giving rise to the judgments entered by the petitioning creditors as well as briefs containing legal authority supporting their contentions as to whether a bona fide dispute does or does not exist Agrawal does not mention the issue of capacity."  [See *Debtor's Overview of What the Proof Will Show and Supporting Authority* filed on October 14, 2016, Doc. 43].

In the two-day trial on the merits of the Involuntary Petition held on November 2 and 4, 2016, there was no assertion as to the Petitioning Creditors' lack of capacity to file the involuntary bankruptcy.  When Agrawal appealed this Court's entering of its *Memorandum Opinion and Order for Relief* to the District Court, the issue of capacity of the Petitioning Creditors' was not stated as a basis for the appeal (or even mentioned) in either the Notice of Appeal or the Brief in Support of Appeal [CV-17-038-HE, Doc. 4]. Only after the appeal was dismissed as untimely brought did Agrawal first raise the issue of CO&G's and Acadiana's capacity to file the involuntary by way of his *Amended Motion for Summary Judgment* filed in May 2017, more than a year after the Involuntary Petition had been filed [Doc. 106].[6]

---

[6] Technically, Agrawal first raised the issue of lack of capacity and lack of requisite number of petitioning creditors in a pleading entitled *Motion of Putative Debtor to Vacate All Void Orders of This Court Required Without Jurisdiction of This Court by The Petitioning Creditors* filed on April 5 2017 [Doc. 86].  On April 6, 2017, the  Court entered its *Order Striking Debtor's Motion* on the grounds that it failed to comply with Local Rule 9013-1(G) and the

When weighing whether Agrawal's failure to present the lack of capacity defense as above recited constitutes a waiver of the defense the Court has adopted a prejudice analysis. Rather than finding waiver simply on the basis of Agrawal's failure to argue the Petitioning Creditors' lack of capacity in initial motions or his Answer, a prejudice analysis approach balances competing interests: fairness to Agrawal and judicial efficiency. The Court believes this approach is equitable because it does not impose automatic waiver of the capacity defense rigidly simply for failing to assert the defense at the pre-answer pleading stage or in the answer itself when, arguably, a party may likely lack adequate information to make an informed decision as to whether such a defense is warranted. Moreover, it is efficient because it eliminates the need to assert the defense in the initial stage of the litigation in order to preserve it and thus hopefully reduce the assertion of meritless capacity challenges. At the same time, it contributes to efficiency by imposing waiver in situations where the defense is likely to delay proceedings or render proceedings a waste of time, such as when it is asserted, as here, after a year of litigation, including an evidentiary trial and an appeal.

The Court finds, consistent with the above authorities and commentators, that to give meaning to the requirement in Fed.R.Civ.P. 9(a) that capacity must be put in issue by specific negative averment, raising that issue by summary judgment thirteen months after the filing of the case, five months after trial and after dismissal of an appeal Agrawal waived that defense.

There is a case which none of the parties mentioned in their briefs on the Motion

---

ground that Agrawal filed the Motion pro se at a time when he was still represented by counsel. As the Motion was stricken, any issues which it raised are not recognized by the Court.

for Summary Judgment which the Court feels compelled to address.  In *Moncrieff-Yeates v. Kane,* 2013 OK 86, 323 P.3d 215, the plaintiff corporation brought suit to foreclose a mortgage which defendant had given plaintiff to finance the purchase of the property from plaintiff.  Summary judgment was rendered in favor of the plaintiff, and the property set for sheriff's sale.   Approximately two months after the court granted summary judgment the defendant moved to vacate the same based on, among other reasons, the fact that for more than ten years prior to filing suit the plaintiff had been suspended by the Oklahoma Secretary of State for failure to pay franchise taxes.  The plaintiff did not dispute that it was suspended at the time it filed suit but argued that while such suspension might have been a defense had it been raised at the proper time the defendant had waived the defense by not presenting it timely.  The Oklahoma Supreme Court held that the defense of lack of capacity by virtue of the plaintiff's suspension by the Secretary of State was not required to be presented within the time requirements of a motion to dismiss under Title 12 O.S. § 2012 (B):

> Nothing in the statutory scheme for collecting franchise taxes even suggests the Legislature intended that the enforcement of the penalties imposed on a suspended corporation depend on a defendant's timing in notifying the court of the corporation's suspension.  We will not construe title 12, section 2012 (B) to allow a suspended corporation to avoid the penalties imposed for its failure to pay franchise taxes merely because the issue is not raised by the defendant under the time line imposed by title 12 § 2012(B).  To do so would defeat the clear language of and legislative intent underlying title 68, section 1212(C).

> ****

> Title 12, section 2012(B) does not prevent the issue of a corporation's suspension being raised and considered at any time during the proceedings.

21

****

2013 OK at ¶27, ¶30, 323 P.3d at 221, 222.

In essence, the Supreme Court held that there was virtually *no* basis for a claim of waiver where a corporation (or an LLC) had been suspended by the Secretary of State. Is this Court bound to follow the "never waivable" holding enunciated in *Moncrieff-Yeates*? It is not.

As stated above, Rule 7017(b)(2) requires that capacity to bring suit is governed by the substantive law of Oklahoma, and this Court has found that a corporation or limited liability company whose right to do business has been suspended by the Secretary of State cannot be a petitioning creditor in an involuntary proceeding.  That being said, *the manner, means and timeliness of asserting* a defense of lack of capacity is a matter of procedure regulated and determined by the federal courts, as a matter of procedure in the course of bankruptcy administration, as to which they are not bound and limited by state decisions or statutes.  *Simon v. United States*, 891 F.2d 1154, 1156 (5th Cir 1990) ( "[T]he Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs." (Citing *Morgan Guaranty Trust Co. v. Blum* , 649 F.2d 342, 354 (5th Cir. 1981)); *Cf. International Shoe Co. v. Pinkus*, 278 U.S. 261, 265, 49 S.Ct. 108 (1929) (noting that the intent of Congress in establishing uniform bankruptcy law necessarily excludes inconsistent state regulation); *Cisneros v. Kim* (*In re Kim*), 257 B.R. 680, 687-88 (9th Cir. BAP 2000) (to the extent that state law creates procedural rules that an application would override or conflict with bankruptcy law, such rules are pre-empted).

The Federal Rules and the substantial body of cases under them make clear that the defense of lack of capacity can be waived if not raised early in the litigation, if not in

early motions and answers then at least prior to trial, to avoid prejudice and a waste of judicial resources. That body of law would be negated if this Court were to follow *Moncrieff-Yeates* and hold that the lack of capacity defense was never subject to waiver. In *Moncrieff-Yeates* the Oklahoma Supreme Court made clear that its decision not to permit waiver was primarily based on the legislative and public policy to encourage corporations to pay franchise taxes and allow such corporations to avoid the penalties for not doing so simply because the opposing party failed to timely assert the lack of capacity defense. 2013 OK at ¶¶ 26, 27, 323 P.3d at 221. Oklahoma's interest for carving out a rare exception to its normal pleading rules in order to collect taxes, while weighty, does not allow the Federal Courts to carve out a similar exception in derogation of its Rules of Civil and Bankruptcy Procedure.

### F. Whether The Involuntary Bankruptcy Required One or Three Petitioning Creditors

Agrawal contends in the Motion that CO&G and Acadiana lacked the capacity (although he characterizes it as standing or lack of jurisdiction) to be petitioning creditors, and the one remaining Petitioning Creditor, Great Western Insurance Co., was insufficient to support the involuntary since Agrawal had more than twelve creditors.[7]

The basic requirement under § 303(b)(1) is that if the debtor has twelve or more

---

[7]Agrawal's Motion is the first time the debtor argues that he had more than 12 creditors. In his *Corrected Motion to Dismiss* and testimony at Trial on the Involuntary Petition, Agrawal argued that he had no creditors. [See Transcript of Proceedings Doc.75]. Indeed, it wasn't until the court ordered Agrawal to file his schedules, that Agrawal finally acknowledged he had any creditors [Doc.108], nine days *after* his *Corrected Motion for Summary Judgment* was filed, thirteen months *after* the Involuntary was filed, and six months *after* the Order for Relief was entered.

eligible creditors (holding claims that are not contingent as to liability and not subject to a bona fide dispute as to liability or amount and excluding from that calculation certain specifically enumerated holders) then three or more petitioning creditors are needed to commence an involuntary proceeding.   If the debtor has fewer than twelve creditors (holding claims are not contingent as to liability and not subject to bona fide dispute as to liability or amount and excluding from that calculation certain specifically enumerated holders), one petitioning entity is sufficient, although more are permitted.  This means that a single entity, under appropriate circumstances, is expressly permitted by § 303 to commence an involuntary petition.

The Court has already determined that Agrawal by his delay waived his probable successful defense that CO&G lacked capacity to be a petitioning creditor. The Court has also held that Acadiana did have capacity to file the Involuntary Petition because it was in good standing with the Oklahoma Secretary of State on the date of the filing of the Involuntary Petition notwithstanding that it was suspended by the Secretary of State at the time of the trial.  Agrawal has not questioned the capacity of the third Petitioning Creditor, Great Western Insurance, to be a Petitioning Creditor.  Thus, there were the requisite three petitioning even if the Court utilizes the seventeen (17) creditors listed by Agrawal in his Amended Schedules,[Doc.119], the seven (7) creditors listed in his original Schedules, [Doc. 108], or only the four (4) Petitioning Creditors.   Having decided the issue it may not appear that the Court need address the matter further; however, the dispute as to the number of creditors which Agrawal has also highlights why waiver was particularly applicable to this case.

If a debtor believes an involuntary petition has been filed by fewer than the requisite

24

number of creditors, the debtor should file an answer as contemplated by § 303(d). *Collier on Bankruptcy* ¶ ¶ 303.14 [9]; 303.20 [3]. The lack of the requisite number of petitioning creditors' defense would have been part and parcel of the lack of capacity defense. Both affirmative defenses should have been raised in the Answer Agrawal filed on June 15, 2016. [Doc.32]. Nether was. If they had, the Petitioning Creditors may well have sought to amend the Involuntary Petition by joining additional eligible petitioners. In fact, Agrawal waited until after trial and appeal to raise both issues in his *Amended Motion for Summary Judgment.*

### G. Conclusion

The failure of Petitioning Creditor CO&G to be in good standing with the Oklahoma Secretary of State at the time of the filing of the Involuntary Petition and the failure of Petitioning Creditor Acadiana to being good standing at the time of this Court's entry of the Order for Relief presents an issue of capacity to sue and not a question of this Court's jurisdiction to hear the Involuntary Petition. The Court further finds that the Debtor failed to properly and timely raise the issue of lack of capacity under the Fed.R.Bankr.P. until the filing of his *Amended Motion for Summary Judgment*, long after the pleading stage, after trial of the involuntary bankruptcy and appeal and that such delay in properly and timely raising the issue resulted in the waiver of such defense. Accordingly.

The *Amended Motion for Summary Judgment* of Debtor Krishna Agrawal [Doc.106] is hereby **DENIED**.

# # #