

**Dated: October 16, 2018**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KHRISHNA KUMAR AGRAWAL, | ) | Case No. 16-11253-JDL |
| | ) | Involuntary Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CO&G PRODUCTION GROUP, LLC, | ) | |
| and SPOON RESOURCES, LLC., | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. No. 18-1005-JDL |
| | ) | |
| v. | ) | |
| | ) | |
| KHRISHNA KUMAR AGRAWAL, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND  ORDER GRANTING
## <u>MOTION FOR DEFAULT JUDGMENT</u>

Before the Court for consideration is the *Motion for Default Judgment Against*

*Defendant with Notice of Opportunity for Hearing and with Brief in Support* filed by the

CO&G Production Group, LLC, and Spoon Resources, LLC, (collectively the "Plaintiff") filed

on July 16, 2018 (the "Motion") [Doc.15].[1]  In accordance with Local Rules, the Motion contained a Notice of Opportunity for Hearing which advised Defendant Krishna Kumar Agrawal ("Agrawal") that he had fourteen days within which to file an objection or otherwise respond to the Motion, and that if he did so the matter would be heard on September 27, 2018.  [Doc.15 & 17].  While the Defendant failed to file an objection or otherwise respond to the Motion, the Court heard the Motion in open court on September 27, 2018.  The Plaintiffs appeared by counsel.  Agrawal failed to appear.

The Motion seeks default judgment upon the Plaintiffs' *First Amended Complaint* filed on February 5, 2018, which seeks to bar Agrawal from receiving a discharge pursuant to 11 U.S.C. § 727[2], as well as determining Agrawal's debt to the Plaintiffs non-dischargeable under § 523(a). [Doc.3].  Pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014, the following represents the findings of fact and conclusions of law upon which the Court's Opinion and Order is predicated.

### I. Jurisdiction.

The Court has jurisdiction over this matter hundred 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b).  This matter seeking a determination of an objection to discharge and the dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J) over which this Court has authority to enter a final order.  Venue is proper pursuant to 28 U.S.C. § 1409(a).

---

[1] References to Docket Entries in this Order refer to the docket in Adversary Case No. 18-1005, unless otherwise noted.

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

## II. Procedural History- Agrawal's Default

The underlying (lead) bankruptcy case to this adversary proceeding was commenced by the filing of an Involuntary Petition for Relief against Agrawal on April 4, 2016. [Case No. 16-11253, Doc.1]. After thorough briefing by the Petitioning Creditors and by Agrawal, on November 1, 2016, the Court entered its Order that there existed the three requisite Petitioning Creditors holding claims not subject to a bona fide dispute and meeting the aggregate money standard of $15,425.00 so as to be eligible to file the involuntary bankruptcy. [Case No. 16-11253, Doc. 51]. On November 2 and 4, 2016, the Court conducted a two-day evidentiary hearing to determine whether an Order for Relief should be entered adjudicating Agrawal a debtor. [Case No. 16-11253, Doc. 53 & 55]. On December 13, 2016, the Court entered its *Memorandum Opinion and Order for Relief in Involuntary Proceeding* [Case No. 16-11253, Doc. 63].

As stated above, in this adversary proceeding the Plaintiffs' *First Amended Complaint* was filed on February 5, 2018. The Docket Sheet reflects that service was had upon Agrawal by first-class mail on February 9, 2018, at both addresses which he had previously used in the bankruptcy court: 4133 N. Lincoln Blvd., Oklahoma City, Oklahoma 73105 and 6704 N.W. 110th Court, Oklahoma City, Oklahoma 73162-4736. [Doc. 4].[3] On

---

[3] During the course of the bankruptcy proceedings Agrawal was represented by five or six attorneys all of which subsequently withdrew from representation. During the times that he represented himself *pro se,* he most often gave his address as 4133 N. Lincoln Blvd., Oklahoma City, OK 73105. It was this address which he used on the pleading he filed *pro se* in the lead bankruptcy case immediately preceding the filing of this adversary proceeding. [Case No. 16-11253, Doc. 190, pg 55]. Three days after he was served with process in the present adversary, Agrawal filed another pleading in the underlying bankruptcy case, again showing his address as 4133 N. Lincoln Blvd., Oklahoma City, Oklahoma 73105. [Case No. 16-11253, Doc. 204, pg. 5].

February 26, 2018, Agrawal responded to the *First Amended Complaint* by filing his *Motion to Dismiss Complaint Due to Fraud of Petitioning Creditors and Jeffery Tate Requiring his Disbarment and Motion for Summary Judgment* (the "Motion to Dismiss") [Doc. 5].   On February 28, 2018, the Court entered its *Order Striking Motion* which struck Agrawal's Motion to Dismiss because it did not comply with the Local Rules in that (1) it contained multiple claims for relief in violation of Local Rule ("LR") 9013-1.B; (2) failed to include the proper Notice of Opportunity for Hearing in violation of LR 9013-1.G; and (3) failed to comply with LR 7056-1 which, in pertinent part, requires that a "motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which movant contends no genuine issue exists" and "each fact shall be stated in a separately numbered paragraph and shall refer with particularity to those portions of the affidavits, discovery materials, documents, or other parts of the record before the Court upon which the movant relies." [Doc. 6].   The Order Striking the Motion to Dismiss also reminded Agrawal that he had "been previously admonished on numerous occasions that if he were to continue to represent himself *pro se,* he was to follow the proper procedure required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Western District of Oklahoma." [*Id*.].[4]

---

On the same date, February 12, 2018, Agrawal filed his *Notice of Appeal of All Orders Denied by the Court Within Last 14 Days* utilizing the N. Lincoln Blvd. address.   As will be discussed in more detail, there were other pleadings which were mailed by first-class mail by the Bankruptcy Noticing Center to Agrawal at *both* the N. Lincoln Blvd. address and the 6704 N.W.110[th] Court address in Oklahoma City.  See e.g. Certificate of Notice filed 1/26/2018 [Case No. 16-11253, Doc. 199].

[4] The Order further warned Agrawal that his "actions in continuing to ignore the admonitions of the Court will result in sanctions as are appropriate to enforce or implement court orders or rules, or to prevent any further abuse of process."   While *pro se* litigants would normally be accorded more latitude than that accorded attorneys, Agrawal is not the normal *pro se* litigant.   He has been involved in no less than 100 pieces of litigation over the years, much of it *pro se.*  In this Court he

The *Order Striking Motion* to dismiss did not contain a date by which Agrawal's answer was due; accordingly, pursuant to Fed.R.Bankr.P. 7012(a)(1)[5] an answer would be due within fourteen (14) days after the notice of the court's action. The Bankruptcy Noticing Center Certificate of Mailing filed in the case reflects that a copy of the Order on Motion to Dismiss Adversary Proceeding was mailed by first-class to Agrawal at 4133 N. Lincoln Blvd., Oklahoma City, OK 73105, on March 2, 2018. [Doc.7].  Thus, in accordance with Rule 7012(a)(1) the date by which Agrawal was required to answer the *First Amended Complaint*, allowing for three days for service by mail pursuant to Rule 9006(f), would have been March 19, 2018.

Agrawal filed nothing in the case until July 6, 2018, when he filed the pleading entitled "*Jurisdiction and Venue and Notice of Opportunity for Hearing"* (the "Pleading"). [Doc. 10].  This filing was after the Plaintiff had filed its *Plaintiffs' Application for Default Certificate-Court Clerk* on June 19, 2018 [Doc. 8], and after the Court Clerk had entered a *Certificate of Default* on June 21, 2018, in accordance with Rule 7055. [Doc 9].  In the Pleading, Agrawal claimed that he never received notice of the Court's *Order Striking Motion* to dismiss which it had entered back on February 28, 2018 and which had been mailed to him by the Bankruptcy Noticing Center on March 2, 2018, until it was brought to

---

has made such a habit of flaunting the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules to the extent that he has been admonished by this Court numerous times to follow the Rules, and has had more than a dozen motions and other pleadings stricken as a result of his noncompliance. [See e.g. Case No. 16-11253, Doc's. 87, 139, 149, 158, 196, 197, 214, 221, 226].

[5] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

his attention on the day he filed his Pleading, July 6, 2018. In the Pleading he stated that he "now seeks permission to file late answer to the claims of CO&G and Spoon" and "intends to supplement his Answer within five days." [Doc. 10]. On July 13, 2018, Agrawal filed another pleading entitled, in part, *Second, Amended Answer, and Motion to Dismiss the Complaint etc*. [Doc. 12].[6] In this pleading, Agrawal stated that "[w]ith leave of Court, the Debtor amends the Notice of Opportunity for Hearing, and denies all allegations of Complaint as answered on February 26, 2018." [Doc. 12, pg. 2 ¶ 1]. Of course, "leave of court" was never obtained for Agrawal filing his answer one hundred eight (108) days out of time.[7]

Also on July 13, 2018, Agrawal filed a pleading entitled *Memorandum of Points and Authorities* which requested that the Complaint be dismissed for failure to state a claim

---

[6] The pleading's actual title, containing more than 100 words and reproduced here with misspellings and grammatical errors, is *"Second, Amended Answer, And Motion To Dismiss The Complaint Due To Fraud Of Petitioning Creditors And No Judgment. Both Petitioning Creditors Had No Cause Of Action And No Debt. Eric. Stall CO&G Production Group, LLC Obtained A Elleven Million Dollars Judgment By Fraud Upon Court In The Absence Of Agrwal And Without Notice To Him. Honorable Carlos Chappelle Admitted To His Violation Of Agrawal's Due Process Rights And His Bias When He Instantly Disqualified Himself. CO&G Lawyer, Eric Stall Lied To Judge, Mark Barcus, Even Though He Had Received Answers To Discovery Requests. Gregory Williams Was Bribed By Jerry Parent With Money From Ron Walker To Sign A Contrcat Of Sale. He Was Booted Out By the Judges, Last One Being On December 30, 2015."*

The thirty-five (35) page pleading with seventy-six (76) pages of exhibits pertains to extraneous matters, mostly the state court litigation between Agrawal and others going back nearly a decade. Agrawal's pleading sought damages against individuals for "$11 million for defrauding the Court and Agrawal" and requesting that such individuals "be turned over to Law Enforcement lacking authority of this Court." [Doc. 12, pg. 36]. Though the *First Amended Complaint* is one objecting to Agrawal's discharge, Agrawal's lengthy pleading makes only a passing reference to discharge/non-dischargeability issues by briefly mentioning that "there is no consent to non-dischargeability, 28 USC sec 157(C)" and that "there is no reason that the discharge should not have been granted with (sic) 180 days." [Doc. 12, pg. 2].

[7] From his March 19 answer date to the filing of his July 6, 2018, pleading entitled *"Jurisdiction and Venue and Notice of Opportunity for Hearing."*

under Rule 7012(b)(6), or in the alternative, that the Plaintiff be required to provide a more definite statement under Rule 7012(e). [Doc. 13].  On July 17, 2018, Plaintiff filed a *Motion to Strike Debtor's Memorandum of Points and Authorities* on several grounds, including that it was not titled as a "motion" and contained multiple requests for relief (dismissal of the complaint, a more definite statement and sanctions against Plaintiffs' counsel "for fraud upon the Court and violating Rules of Professional Conduct" in violation of the Local Rules). [Doc. 20].  Agrawal failed to respond to the Motion to Strike within fourteen (14) days as required by Local Rule, and as a consequence, on August 10, 2018, the Court entered its *Order Granting Motion to Strike Debtor's Memorandum of Points and Authorities*. [Doc. 26].

On July 17, 2018, Plaintiff filed its *Amended Motion to Strike Debtor's Motion to Dismiss Complaint* on the basis that the same had been filed out of time without Agrawal having obtained leave of court, and for the further reason that while the pleading included a Motion to Dismiss it failed to include the words "Notice of Opportunity for Hearing" in the title of the pleading as required by LR 9013-1.G. (Doc. 19].[8]  Agrawal did not respond to Plaintiffs' *Amended Motion to Strike* within the fourteen days required by Local Rule, and on August 10, 2018, the Court entered its *Order Granting Amended Motion to Strike Debtor's Motion to Dismiss Complaint* which had also included Agrawal's attempt to file an answer without leave of court. [Doc. 25].

The Court has no doubt that Agrawal was not only served with process in this

---

[8] Agrawal had numerous of his prior motions stricken for failure to properly have the "Notice of Opportunity for Hearing" language required by LR 9013-1.G, and he has been repeatedly warned of the necessity of including such language. [See e.g. Case No. 16-11253, Doc's. 87, 139, 149, 214, 226].

adversary but, most importantly for the Motion for Default Judgment presently before the Court, that he was served with a copy of the *Order Striking Motion* to dismiss entered on February 28, 2018, which was mailed to him at his address shown on the docket sheet by the Bankruptcy Noticing Center on March 2, 2018.  His attempts to file an answer and various motions more than three months later without leave of Court, and which attempts were stricken as procedurally infirm, clearly placed him in default status.  The question then becomes whether there were any extenuating circumstances underlying his tardiness which may permit the Court to grant relief from the default. The Court cannot find any.

On July 6, 2018, Agrawal filed a *Notice of Change Of Address* in the lead bankruptcy case requesting a "change of address" to 4133 N. Lincoln Blvd., Oklahoma City, OK 73105. [Case No. 16-11253, Doc. 270].  The Docket Sheet reflects that was the same address which was entered by the clerk when the case was opened on April 4, 2016, and the same address when Agrawal was added as an "interested party" as a result of him filing a *Special Entry of Appearance of Kris K. Agrawal* on April 5, 2017 utilizing that address. [Case No. 16-11253, Doc. 85].  That was the address which Agrawal had been using to file pleadings nearly from the inception of representing himself *pro se*.[9]  It was also the address to which the crucial February 2018 Order Striking Motion to Dismiss was mailed to him.

The Notice of Change of Address which Agrawal filed on July 6, 2018, indicates that

---

[9] See e.g. *Order Granting Motion to Withdraw as Counsel* drafted by Agrawal's prior attorney which stated that his Motion to Withdraw as Counsel had been sent to Agrawal at "4133 N. Lincoln Blvd., Oklahoma City, OK 73105, which has always been the Debtor's mailing address for purposes of this case." [Case No. 16-11253, Doc 135]; See also, *Statement of Pro Se Status* for filing in the Tenth Circuit BAP filed in the Bankruptcy Court on December 4, 2017. [Case No. 16-11253, Doc. 168].

the mail should be sent to the 4133 N. Lincoln Blvd. address because:

> "I have a disabled daughter who collects the mail without knowledge and I do not live there. She hides the mail under Pillow or Mattress.  I have not received the Notice of Striking my Response to adversary Proceeding and I was struck by a Semi Truck Tractor and Loaded Trailer on May 16, 2018 that has paralyzed me with slow recovery."

Those statements do not afford Agrawal any relief from his default status.  First, most of the mail in the bankruptcy proceedings, including the crucial *Order Striking Motion* to dismiss, had always been sent to the N. Lincoln Blvd. address, a business address at which his disabled daughter would be unlikely to have hidden the mail under a pillow or mattress.  Second, whatever injuries Agrawal may have sustained on May 16, 2018, occurred two months *after* he was already in default for having failed to file an answer by March 19, 2018.  Third, any assertion that Agrawal was unable to timely file an answer or otherwise participate in legal proceedings because of his injuries is made suspect, if not refuted by, the fact that he was apparently able to prepare and file numerous (more than ten) *pro se* pleadings in Oklahoma District Court,[10] the Oklahoma Supreme Court,[11] the

---

[10] See e.g. *Agrawal et al. v. Oklahoma Department of Labor et al.*, Oklahoma County District Court, Case No. CJ-2010-5857 (five pleadings filed between 6/05 and 6/13/2018).

The Court is entitled to take judicial notice of both its own docket sheets and the state court docket sheets.  *United States v. Ahidley*, 486 F.3d 1184,1192, n. 5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *Adams v. Watts,* 2009 WL 5101759 (W.D. OK. 2009) (taking judicial notice of the public records of the District Court of Comanche County available on the Internet); *Shoulders v. Dinwiddie,* 2006 WL 2792671 (W.D. OK. 2006) (court may take judicial notice of state court records available on the world wide web including docket sheets in district courts); *Stack v. McCotter,* 79 Fed.Appx. 383, 391 (10th Cir. 2003) (unpublished opinion) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed.R.Evid. 201).

[11] *Agrawal v. Oklahoma Supreme Court et al.*, Case No. MA-117113, Petition for Writ of Mandamus filed 6/15/018; *Agrawal, et al., v. Honorable James B. Croy et al.*, Case No. MA-16940,

United States District Court for the Western District of Oklahoma (including a personal

injury action arising out of the May 16, 2018, traffic accident)[12] and the Tenth Circuit Court

of Appeals[13] between the May 22 (six days after the vehicle accident) and his first attempt

to file an untimely responsive pleading to the Plaintiff's *First Amended Complaint* on July

6, 2018.[14]  While the Court finds Agrawal's "paralysis defense" unpersuasive as it relates

to the entering of a default judgment, it cannot find that assertion of the defense supports

the imposition of sanctions as requested by the Plaintiffs.  The grounds for denial of a

discharge are those set forth in § 727(a), and the court is required to construe those

strictly.  The Court cannot exercise its equitable powers to deny a discharge on grounds

not enumerated, i.e. the denial of the discharge as a sanction.  See *Law v. Siegel,* 571

U.S. 415, 134 S.Ct. 1188 (2014).  The assertion of non-meritorious, or even  false,  claims

--------

*Petition for Writ of Mandamus* filed 4/17/2018, including an *Affidavit for a Motion to Sanction Daniel Delluomo and Chris Holland for False Certification of Mailing, Misleading This Court and  Hearing to Vacate Void Judgment as a Matter of Law* filed on 5/22/2018 which make reference to his accident of May 16, 2018;

[12] *Agrawal v. Courts of Oklahoma and Richard V. Ogden*, Case No. CIV-18-396-D (*Motion to Extend Time to Answer Motion to Dismiss Filed 5/21/2018* filed on 6/11/2018); *Agrawal v. TJ B Investments, LLC,* Case No. CIV-18-0652-R filed 7/5/2018.

[13] *Agrawal v. Richard V.Ogden et al.*, Case No. 18-6054.

[14] Plaintiffs' Motion for Default has raised the issue that Agrawal has misrepresented the seriousness of his alleged "paralysis" due to the vehicle accident.  There is evidence in the record that the hospital Discharge Summary indicated that Agrawal was discharged from the hospital one day after his accident, that he was "ambulatory", was "sent home with a sling", was only restricted from "lifting over 10 pounds" or engaging in "strenuous/rigorous activity" for "1 week", and  was not given any prescription drugs.  The Discharge Summary made no mention of "paralysis". [Doc. 21-9].  It was Agrawal that made the Discharge Summary public when he attached the same to his Application to Consider Late Filing Brief in Chief of Appellant in the Tenth Circuit Court of Appeals on June 6, 2018.  In view of the fact that the accident happened months after Agrawal was already in default, for purposes of the issue before the Court the Court need not determine the veracity of Agrawal's claims as to the extent of his injuries.

or defenses may be sanctionable under other provisions of the Bankruptcy Code and Rules, but the denial of the discharge is not one of those.

Section 727(a)(4)(B) prohibits the granting of a discharge to a debtor who "knowingly and fraudulently, or in connection with the case... Presented or used a false claim." This provision of the Code is sparsely used, and the courts that have considered objections to discharge for presenting a "false claim" require the plaintiff to prove that the debtor "presented or used an inflated or fictitious claim." *Hendon v. Oody (In re Oody)*, 249 B.R. 482, 487 (Bankr. E.D. Tenn. 2000). For purposes of § 727(a)(4)(B), a "claim" as defined by § 101(5) to mean a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." A fictitious defense ("paralysis") created against a motion for default judgment is not such a "false claim" falling within the purview § 727(a)(4)(B).[15]

### III. Plaintiffs' Entitlement to Default Judgment On Its Claims To Deny Agrawal A Discharge

The entry of default judgments is governed by Federal Rule of Civil Procedure 55, made applicable to these proceedings by Rule 7055. Generally, a "defendant by his default, admits the plaintiff's well-pleaded allegations of fact." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (finding that "a default judgment is unassailable on the merits."); *Tripodi v.*

---

[15] Similarly, in their Motion for Default Judgment the Plaintiffs bring to this Court's attention that Agrawal may have recently committed fraud on the court in pending state court litigation for which he was sanctioned with a $5,000 fine. *Vance-1 Properties, LLC, Plaintiff v. Energy Production Services, LLC, Defendant, Case No. CJ-2017-4737.* While Agrawal's misdeeds in state court if true, may reflect poorly upon him, they do not constitute a statutory basis within § 727(a) to bar his discharge.

*Welch*, 810 F.3d 761, 764 (10th Cir. 2016) ("[A]fter a default judgment is handed down, a defendant admits to a complaint's well-pleaded facts and forfeits his or her ability to contest those facts."); *Personal Industrial Loan Corp. v. Forgay*, 240 F.2d 18, 20 (10th Cir. 1957) ("By failing to appear and permitting a default judgment to be entered, defendant admitted only facts well pleaded").  A default, however, does not ensure that a judgment should be entered.  "[A] party is not entitled to default judgment as a matter of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Purzel Video GmbH v. Smoak*, 70 F.Supp.3d 1222, 1230 (D. Colo. 2014) (quoting *Cablevision of Southern Connecticut, Ltd. Partnership v. Smith*, 141 F.Supp.2d 277, 281 (D. Conn. 2001)); *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987).  Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constituted a legitimate basis for the entry of a judgment.  *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994).

In its Motion for Default Judgment, Plaintiff cites the supporting law for the entry of a default judgment as would be the case in matters not involving non-dischargeability, *i.e.* a default admits all well-pleaded facts but not legal conclusions.  However, when it comes to default judgments involving non-dischargeability complaints there appears to be a heightened or more stringent standard which bankruptcy courts apply.  A movant is not entitled to a default judgment as a matter of right, even though a debtor is in default for failing to answer or otherwise respond to a complaint.  *AT & T Universal Card Services, Corp. v. Sziel (In re Sziel),* 206 B.R. 490, 493 (Bankr.N.D. Ill.1997) (citing *Wells Fargo Bank v. Beltran (In re Beltran),* 182 B.R. 820, 823 (9th Cir. BAP 1995)); see also *New Austin*

*Roosevelt Currency Exchange, Inc., v. Sanchez (In re Sanchez)*, 277 B.R. 904, 907 (Bankr. N.D. Ill. 2002) (citing *Lewis v. Lynn,* 236 F.3d 766, 767 (5th Cir. 2001)). "Fed.R.Bankr.P. 7055(b)(2) governing the granting of default judgments provides the court with broad discretion to conduct such hearings and receive evidence that it deems proper before entering a default judgment." *In re Trevisan*, 300 B.R. 708, 713 (Bankr. E.D. Wis. 2003). Granting of a default judgment lies within the sound discretion of the court. *Merrill Lynch Mortgage Corp. v. Narayan,* 908 F.2d 246, 252 (7th Cir. 1990) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products Inc*., 722 F.2d 1319, 1322 (7th Cir. 1983)).

As the court stated in *In re Bungert*, 315 B.R. 735, 740 (Bankr. E.D. Wis. 2004):

> In this respect, the Court heartily agrees with *Sziel, supra*, and *FDS National Bank v. Alam (In re Alam)*, 314 B.R. 843, 841 (Bankr. N.D. Ga. 2004), in which that court stated:
>
> The Court in the exercise of its discretion will not, however, enter default in a nondischargeability proceeding alleging actual fraud based on technical compliance with notice pleading rules. Unless there are specific factual allegations from which actual, subjective fraudulent intent may be inferred or Plaintiff produces evidence at a hearing that proves such intent, entry of default judgment based on actual fraud is not appropriate.

Similarly, in *In re Marquardt*, 561 B.R. 715, 721 (Bankr. C.D. Ill. 2016):

> This Court has previously discussed the entry of default judgments in the context of adversary proceedings in bankruptcy. See *First Bankers Trust Co. v. Dade (In re Dade),* 2012 WL 1556510, at *1 (Bankr. C.D. Ill. 2012). In *Dade*, the Court explained that in "bankruptcy, where a debtor has a presumptive right to a discharge, default motion should not be granted unless the movant demonstrates that its debt is nondischargeable as a matter of law." *Id* at *4 (citing *Sanchez*, 277 B.R. at 907 (citing *Valley Oak Credit Union v. Villegas (In re Villegas),* 132 B.R. 742, 746 (9th Cir. BAP 1991) (court must determine whether a plaintiff is entitled to judgment); *Lovell v.*

13

> *McArthur (In re McArthur)*, 258 B.R. 741, 746 (Bankr. W.D.
> Ark. 2001) (noting that bankruptcy courts have taken a
> conservative approach and sometimes refrain from granting
> default judgment motions which deprive debtors of a
> discharge)). ***  It is for that reason that the Court will enter
> judgment only if the evidence submitted establishes a *prima
> facie* case for nondischargeability.

Although this is not a consumer debt, another good statement of the test which the

Court believes it should apply in determining whether the default judgment can be entered

in a non-dischargeability matter is from *Sziel*, supra. 206 B.R. at 495:

> Entry of a default judgment is discretionary with the trial court
> and may be denied where there are insufficient facts to support
> the claim.  Under the circumstances currently existing in the
> consumer debt arena it is incumbent upon the bankruptcy
> courts to ensure that the 'fresh start' policy is not been violated
> by entry of default judgments and 'agreed' orders in baseless
> nondischargeability actions.  In order to avoid that result, this
> Court will require evidence of some facts tending to support
> the plaintiff's allegations of fraud before it will enter a default
> judgment or agreed order settling an action.  The creditor has
> a number of methods for establishing the validity of its claim,
> including presenting transcripts of § 341 meetings or Rule
> 2004 examinations or other documentary evidence
> establishing the 'badges of fraud'.  In some instances it may be
> necessary to hold a hearing with the debtor brought before the
> court under a subpoena power.

In considering whether to enter a default judgment the Court must be mindful of the

special deference which should be paid to a debtor obtaining a discharge.  "[A] central

purpose of the Code is to provide a procedure by which certain insolvent debtors can

reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life

and a clear field for future effort, unhampered by the pressure and discouragement of

preexisting debt.'"  *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654 (1991).  In order

to effectuate this "fresh start" policy of bankruptcy relief, exceptions to discharge are

14

narrowly construed with all doubts resolved in the Defendant's favor. *Bellco First Federal Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997); *Chevy Chase Bank, FSB v. Kukuk  (In re Kukuk)*, 225 B.R. 778, 782 (10th  Cir. BAP 1998);  The burden of proof for establishing an exception to discharge is a preponderance of the evidence. *Grogan v.* Garner, 498 U.S. 279, 286, 111 S.Ct. 654 (1991).

The granting of a default judgment in a non-dischargeability action also appears to be especially scrutinized if the debtor, as here, is *pro se. Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2nd Cir. 1993) ("As a general rule a ... court should grant a default judgment sparingly... when the defaulting party is appearing *pro se.*").  Of course, Agrawal is not the average *pro se* litigant,[16] and much can be said for him not being accorded any special consideration, particularly in light of the numerous previous warnings he has had from this Court to comply with the rules if he was going to continue *pro se.*

With all the principles above in mind, the Court now turns to look at each Claim for Relief in the *First Amended Complaint* to see whether the facts as the Plaintiff has alleged, and are deemed admitted by Agrawal, meet the burden of establishing the legal elements for a non-dischargeable determination.  The Plaintiff's *First Amended Complaint* contains six Claims for Relief for either barring Agrawal's discharge or denying the dischargeability of his debts to the Plaintiffs:

1. § 523(a)(2)(A) (CO&G only) (obtaining money and credit by

---

[16]  The Oklahoma District Court docket sheets reflect that Agrawal has been a party to well over 100 lawsuits, including twenty-two (22) in Cleveland County, sixty-one (61) in Oklahoma County, forty-seven (47) appellate cases in the Oklahoma Court of Civil Appeals or Supreme Court (forty-one (41) as a petitioner or appellant) and sixteen (16) cases as a plaintiff in the United States District Court for the Western District of Oklahoma.  See footnote 10 above for the court's authority to take judicial notice of the state court dockets.

false pretenses or actual fraud);

2. § 523(a)(6) (CO&G and Spoon) (willfully and maliciously acting with the intent to injure the creditors by "abusive and bad-faith litigation tactics in state court, federal court and bankruptcy court";

3. § 727(a)(2)(A) (objection to discharge by acting with intent to hinder, delay or defraud creditors, or conceal property within one year of the filing of bankruptcy);

4. § 727(a)(2)(B) (false oath by fraudulently failing to include property in statement of financial affairs and schedules);

5. § 727(a)(3) (failing to keep sufficient records, books, documents by which his financial condition might be ascertained); and

6. § 727(a)(4)(A) (false oath and failure to disclose information in the bankruptcy schedules and statements).

### IV. The § 523(a) Objections to the Dischargeability of the Debt Owed Plaintiffs

Plaintiffs by their *First Amended Complaint* seek both a determination that Agrawal is barred from obtaining a discharge under § 727(a) and a determination that the debt owed them by Agrawal is non-dischargeable under § 523(a).  In their Motion for Default Judgment, however, Plaintiffs only seek a default judgment on their § 523(a) claims in the event that the Court does not enter a judgment barring the debtor's discharge under § 727. Because this Opinion and Order finds that Agrawal is not entitled to a discharge under § 727 as discussed below, the Court need not address the Plaintiffs' § 523(a) Claims for Relief.

### V. The § 727(a)(4)(A) False Oath Objection to Discharge

Plaintiffs assert that Agrawal failed to disclose numerous assets and other

16

transactions in his Schedules and Statement of Financial Affairs (SOFA), and that such omissions constitute false oaths within the meaning of § 727(a)(4)(A). To prevail on a claim for denial of discharge under § 727(a)(4)(A), the plaintiff must establish the following elements by a preponderance of the evidence: (1) that the debtor made a statement under oath; (2) that the statement was false; (3) that the debtor knew the statement was false; (4) that the debtor made the statement with intent to defraud; and (5) that the statement related materially to the debtor's bankruptcy case. *Gullickson v. Brown* (*In re Brown*),108 F.3d 1290, 1294 (10th Cir. 1997); *In re Eigsti*, 323 B.R. 778, 783-84 (Bankr. M.D. Fla. 2005). The burden of proof rests with the party opposing discharge, but "once it reasonably appears that the oath is false, the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged". *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987).

Congress set the bar for denial of a discharge under this section very high by specifying that the debtor must have made a false oath or account "knowingly and fraudulently". It is not enough for the trustee or objecting creditor to point to inaccuracies and inconsistencies in the debtor's schedules, as troubling as those might be. *In re Phouminh,* 339 B.R. 231, 242 (Bankr. D. Colo. 2005). Debtor will not be denied discharge if a false statement is due to mere mistake or inadvertence. *Brown* at 1294; *In re Butler*, 38 B.R. 884, 889 (Bankr. D Kan. 1984). Moreover, an honest error or mere inaccuracy is not a proper basis for denial of discharge. *Brown* at 1295; *In re Magnuson*, 113 B.R. 555, 558-59 (Bankr. D. N.D. 1989). However, the "mistake" or "I didn't think it was important" defenses have their limits. A debtor has an uncompromising duty to disclose whatever

ownership interests are held in property, and "it is not for the debtor to pick and choose or obfuscate the answers". *Fokkena v. Tripp, (In re Tripp)*, 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998). It is not necessary to show that the debtor acted deliberately to deceive the trustee and the creditors; rather, the requisite fraudulent intent can be shown by establishing that the debtor acted with reckless disregard for the truth. *In re Croft*, 500 B.R. 823, 857-58 (Bankr. W.D. Tex. 2013). The cumulative effect of a number of falsehoods in the Debtor's schedules is evidence of reckless disregard for the truth, and is sufficient to circumstantially prove fraudulent intent under § 727(a)(4)(A). *In re Crumley*, 428 B.R. 349, 366-67 (Bankr. N.D. Texas 2010).

In attempting to ascertain fraudulent intent with regard to the Debtor's Schedules, the Court cannot ignore considering Agrawal's overall conduct of his financial affairs and his credibility and candor as a witness before this Court. In hearings regarding the entry of an order for relief in the involuntary case, extracting the most basic information from Agrawal by testimony was difficult and argumentative. Even attempting to ascertain Agrawal's primary residence was difficult with Agrawal testifying that he moved about, sometimes sleeping at a house titled in the name of his wife (although she lives elsewhere), sometimes at a house titled in the name of his daughter, sometimes sleeping in his office (titled in the name of company owned by his daughter) and sometimes he sleeps in his car ("I do not have a primary residence"). He has not owned any real property in his name since approximately 1985. Rental properties are owned by his children's trust managed by a corporation owned by his wife. He performs some maintenance and other jobs for such rental properties but does not receive any income. Several businesses which he assists in managing are owned by his children or companies owned by his children

18

operate out of an office located at 4133 N. Lincoln Boulevard in Oklahoma City which is titled in the name of Vance Properties I owned by his children. He manages Vance Properties but testified he receives no income from that company. Agrawal's wife has been employed for years by the Federal Aviation Administration, but he says he does not know what her job there is because of a security clearance issue.

The Plaintiffs' have pointed out, and the Court can see for itself, numerous material misstatements or non-disclosure by Agrawal in his Schedules, SOFA, or testimony. The pertinent facts relative to the misstatements include, but are not limited to:

(1).   Agrawal testified at the hearing on the involuntary petition that he had no income, owned no real property since approximately 1985 and no ownership interest in several businesses which he manages (without compensation) for his children or companies owned by his children.

(2).   In his SOFA Agrawal listed only one ownership interest in a business entity, that being a membership interest of unknown value in Realty Management Associates, LLC. [Case No. 16-11253, Doc.108, Schedule A/B, Question 19; SOFA, Part 11, Question 27].

(3).   On July 27, 2009, GEO Exploration, LLC, filed bankruptcy in the United Bankruptcy Court for the Western District of Oklahoma with Agrawal signing the Schedules States on behalf of the debtor as "Managing Member." [Case No. 09-14024, Doc. 1, pg. 29]. The SOFA reflected a 100% ownership interest held by Amy Agrawal (Agrawal's daughter). When Agrawal filed *Debtor's Motion to Reopen Case* on behalf of GEO Exploration, LLC, nine years later on January 9, 2018, he signed the same as "Member-Manager". [Case No. 09-14024, Doc. 98]. His Member-Manager status is repeated in the

19

*Motion to Reconsider Denying Motion to Reopen* filed on February 13, 2018, in which he further alleges that "GEO Exploration, LLC, was *not* owned by Amy Agrawal." [Case No. 09-14024, Doc. 101].

(4).    In the hearing on the Involuntary Petition on November 2, 2016, Agrawal testified that the ownership interest in Coal Gas USA, LLC, was held by his daughter, Amy Agrawal. On December 18, 2017, during the pendency of this bankruptcy, Agrawal as "Member/Manager", filed a Petition for Relief under Chapter 7 on behalf of Coal Gas USA, LLC. [Case No.17-15068].    Contrary to his prior testimony, the SOFA indicated that Agrawal was the Member/Manager holding a 100% membership interest in the LLC. [Case No. 17-15068, Doc. 1, pg. 22, ¶ 28].

(5).    In hearings on the Involuntary Petition Agrawal repeatedly testified that he received no compensation (other than reimbursement of expenses) from any of the numerous Agrawal family affiliates, in almost all of which Agrawal was the Manager. Similarly, his Schedules do not reflect any claim that he might have for wages or salary. However, in the GEO Exploration, LLC, bankruptcy Agrawal filed a Proof of Claim for $75,000 for "services". [Case No. 09-14024, Claim 24-1].

"The subject matter of a false oath is material and warrants a denial of discharge if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence of a disposition of the debtor's property". See, e.g. *In re Calder*, 907 F.2d 953, 955 (10th Cir. 1990).    The Court concludes that Agrawal's undisputed omissions were material because the omitted information concerned the discovery of assets in existence or disposition of their property. *Id.*  Accordingly, the Court

finds that Plaintiff has shown the underlying merit to its claims of fraudulent intent raised by the numerous inaccuracies and omissions, and that as a matter of law Debtor has made false oaths in connection with his bankruptcy.  These misstatements and omissions are more than sufficient to establish a pattern of falsity so as to bar Agrawal's discharge under § 727(a)(4)(A).

Because the Court has found that Agrawal should be denied a discharge on grounds of a false oath under § 727(a)(4)(A), it need not address the other grounds asserted by the Plaintiffs to bar a discharge.

**IT IS ORDERED** that the *Motion for Default Judgment Against Defendant with Notice of Opportunity for Hearing and with Brief in Support* filed by the Plaintiffs CO&G Production Group, LLC and Spoon Resources, LLC, on July 16, 2018 [Doc. 15] is hereby **Granted** and Agrawal is denied a discharge.

Pursuant to Fed.R.Bankr P. 7054 and 9021, a separate judgment will be entered contemporaneously with and in accordance with this Opinion and Order.

**# # #**